**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**APPROXIMATELY $960,356.62 IN U.S. CURRENCY SEIZED FROM JP MORGAN CHASE BANK ACCOUNT NO. 950128279 IN THE NAME OF VCG BEST SERVICES, LLC.**

**Defendant *In Rem*.**

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by and through its undersigned counsel, alleges upon information and belief as follows:

## I. NATURE OF THE ACTION

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as:

(i) Approximately[1] $960,356.62 in U.S. currency seized from account number 950128279 at JP Morgan Chase Bank, N.A. in the name of VCG Best Services, LLC (the "Defendant Asset").

[1] All dates and amounts referenced in this Verified Complaint are approximate.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Asset. *See* 28 U.S.C. §§ 1345, 1355(b).

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida, and because this is the same District where the Defendant Asset was brought upon seizure. *See* 28 U.S.C. §§ 1355(b)(1), 1395; 18 U.S.C. § 981(h).

## III. FACTUAL ALLEGATIONS

At all times material to this Action:

### A. The Medicare Program and Durable Medical Equipment

5. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who are 65 years of age or older or disabled. The benefits available under Medicare were governed by federal statutes and regulations.

6. The United States Department of Health and Human Services ("HHS"), through its agency the Center for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

7. Individuals who received benefits under Medicare were commonly referred to as "Medicare beneficiaries."

8. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

9. Medicare was subdivided into multiple program "parts."

10. Medicare Part B covered physician services and outpatient care, including an

individual's access to durable medical equipment ("DME").

11. DME was equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, prosthetic limbs, back braces, knee braces, wheelchairs, nebulizers, and oxygen concentrators.

12. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws and regulations. If Medicare approved a provider's application, Medicare assigned the enrolled provider a Medicare "provider number."

13. A provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

14. Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement. Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

15. To receive payment from Medicare, providers, including DME companies, submitted or caused the submission of claims to Medicare, either directly or through a billing company.

16. A Medicare claim for DME reimbursement was required to set forth, among other things, the name and unique Medicare identification number of the beneficiary, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

17. A claim for DME submitted to Medicare qualified for reimbursement only if the

equipment was medically necessary for the treatment of the beneficiary's illness or injury, prescribed by a licensed physician, and actually provided to the beneficiary as billed.

### B. VCG Best Services, LLC

18. VCG Best Services LLC, ("VCG") was an enrolled Medicare provider that purportedly provided DME to Medicare beneficiaries.

19. VCG was a Florida limited liability company located in Miami, Florida, which is within the Southern District of Florida.

20. VCG's JP Morgan Chase Bank account number 950128279 ("account ending in 8279") was opened on April 7, 2023, using an address at VCG's purported office in Miami, Florida.

21. Co-conspirators submitted and caused VCG to submit false and fraudulent claims to Medicare totaling $6,141,011.86 in U.S. currency for DME that was medically unnecessary and not provided as represented.

22. Alleged beneficiaries of VCG's Medicare claims stated in interviews with law enforcement agents that they did not receive, request, or need any of the DME that was billed for them and had never heard of VCG.

23. The sole alleged provider and prescriber of the DME identified in VCG's Medicare claims stated in an interview with law enforcement agents he or she had never heard of VCG, and he or she had not prescribed the DME to the identified beneficiaries. The sole alleged provider stated that the identified Medicare beneficiaries were not his or her patients. This provider's prescriptions accounted for 100% of VCG's total billed Medicare claims.

24. On October 31, 2023, law enforcement agents also visited VCG's purported office in Miami, Florida, which they found was closed. There were no signs indicating VCG was an

active business.

### C. Defendant Asset

25. From in or about August 30, 2023, through in or about January 4, 2024, as a result of claims for reimbursements, Medicare deposited $3,450,012.64 in U.S. currency into VCG's account ending in 8279. This $3,450,012.64 in U.S. currency constituted 100% of VCG's account ending in 8279's total deposits during that time period.

26. Inclusive of this $3,450,012.64 were three transactions totaling $80,109.16, which were transfers from another account in VCG's name, but which were actually previous transfers of healthcare fraud proceeds from VCG's account ending in 8279.

27. Analysis of VCG's account ending in 8279 revealed that $960,356.62 in U.S. currency on deposit on or about January 17, 2024, which was entire balance of the account at the time, was traceable to Medicare reimbursements.

28. On February 20, 2024, law enforcement agents served a federal seizure warrant on JP Morgan Chase Bank for the balance of VCG's account ending in 8279. *See* Case No. 24-MJ-02302-TORRES (S.D. Fla.).

29. Pursuant to that seizure warrant, JP Morgan Chase remitted $960,356.62 in U.S. currency from VCG's account ending in 8279 to the Federal Bureau of Investigation.

30. The $960,356.62 in U.S. currency, which constitutes the Defendant Asset, was seized by the Federal Bureau of Investigation.

## IV. BASIS FOR FORFEITURE

31. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a specified unlawful activity or a conspiracy

to commit such offense is subject to civil forfeiture.

32. Pursuant to 18 U.S.C. § 1956(c)(7)(F), any act or activity constituting an offense involving a "Federal health care offense" constitutes a specified unlawful activity.

33. Health care fraud, in violation of 18 U.S.C. § 1347, is a "Federal health care offense." *See* 18 U.S.C. § 24.

**FIRST CLAIM**
**Proceeds of Health Care Fraud**
**18 U.S.C. § 981(a)(1)(C)**

34. The factual allegations in paragraphs 1 through 30 are re-alleged and incorporated by reference as if fully set forth herein.

35. As set forth above, the Defendant Asset is property that constitutes or is derived from proceeds traceable to health care fraud in violation of 18 U.S.C. § 1347, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

36. Accordingly, the Defendant Asset is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

[Intentional Blank Space]

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest *in rem* of the Defendant Asset; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Asset; that the Defendant Asset be forfeited and condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By: /s/ Brian H. Zack
Brian H. Zack
Assistant United States Attorney
Florida Bar No. 1000416
United States Attorney's Office for
the Southern District of Florida
99 NE 4th Street, Suite 700
Miami, Florida 33132
Telephone: (305)-961-9407
Email: Brian.Zack@usdoj.gov

**VERIFICATION**

I, Jaylin G. Bingham, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the Federal Bureau of Investigation and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

Executed on this 22 of June 2026.

Jaylin G. Bingham
Special Agent, Federal Bureau of Investigation